[No. A097247. First Dist., Div. Three. Oct. 9, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE EDWARD NORTH, Defendant and Appellant.

622

## Counsel

Richard Such, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Acting Assistant Attorney General, Rene A. Chacon and Nanette Winaker, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PARRILLI, J.**—California's sex offender registration statute requires offenders who have no residence to register in the jurisdiction where they are "located" within five working days of changing their "location," and give the authorities written notice of their new "location." (Pen. Code, § 290, subd. (a)(1)(A) and (f)(1).[1]) In this case, an offender convicted of violating these requirements contends the terms "located" and "location" are unconstitutionally vague.

After careful consideration of the disputed language in its statutory context, and in light of its legislative purpose, we are constrained to agree that section 290 does not give transient sex offenders fair notice of what they must do to conform with the registration requirements governing changes of "location." We also conclude transient offenders can only guess at what is meant by the requirement that they register at every "location" they regularly occupy in a single jurisdiction. (§ 290, subd. (a)(1)(B).) Section 290 fails to provide even minimal guidelines for the registering authorities in these regards, thus encouraging arbitrary enforcement. Accordingly, we hold the provisions governing changes of "location" and registration at multiple "locations" within a jurisdiction unconstitutionally vague.

On the other hand, the basic registration requirements for transient sex offenders—that they register in each jurisdiction in which they are regularly "located" and update their registration every 60 days (§ 290, subd. (a)(1)(A), (B), and (C))—may be reasonably and practically understood by offenders and law enforcement as mandating registration in any jurisdiction where the offender is present on five consecutive working days. Those provisions remain valid. However, the enforceable provisions of section 290 do not provide a truly comprehensive registration scheme for transient offenders. We urge the Legislature to reconsider the matter.

---

[1] Further statutory references are to the Penal Code.

## BACKGROUND

On November 30, 1999, as his parole date approached, appellant Bruce Edward North signed a form notifying him of the requirements for registration as a sex offender upon his release from prison. A counselor at Folsom State Prison went over the form with North and orally explained the requirements. The form noted the necessity of registering within five working days of a change in "residence or location" and informing the authorities of the change within five days, though what information was to be provided was not specified. On May 9 or 10, 2000, North signed the same notification form at San Quentin.

North was paroled on May 27, 2000. On May 30 he met with his parole agent, Steve McCoin, and they discussed the registration requirements. McCoin gave North a voucher to pay for a room at the Garden Motel in Redwood City, and told him to register at that address with the Redwood City Police Department. McCoin told North that if he were homeless, as he was at the time of this first meeting, he would have to reregister as a homeless person.

North registered with the Redwood City Police Department on June 1, giving the Garden Motel as his address. The notification statement on the registration form included statements, initialed by North, acknowledging the requirements that he register within five working days of changing his "residence or location" and "inform the registering agency with which [he] last registered of the new address." North testified that the officer who took his registration told him he would have to come in and register every day if he became homeless, and provide an address each time. A Redwood City police officer confirmed that the department's policy was to require homeless sex offenders to come in daily and let the police know the address where they would be sleeping.

On June 5, the parole office helped North get a room at the Capri Motel in Redwood City. On June 8, North registered with the San Mateo Police Department. He gave a street address, but explained he was homeless and would be sleeping under a tree at that location. He listed the Garden Motel in Redwood City as an alternate address. North testified that he did not actually stay under the tree that night, however. Instead, he went back to the Garden Motel because McCoin told him it would be a parole violation for him to leave Redwood City. McCoin did not have a specific recollection of such a conversation, but said he told his parolees that if they were going to be homeless, they had to be homeless in Redwood City where McCoin's office was, and had to register as homeless persons with the Redwood City police. On June 9, North reregistered in Redwood City at the Garden Motel address.

The records of the Garden Motel showed that North stayed there from May 30 through June 5, and from June 7 through June 23. McCoin met with North in his Garden Motel room on June 21. North came to McCoin's office for a meeting on June 28, and said he was still staying at the Garden Motel. But North failed to appear for his next appointment, on July 5. When McCoin went looking for him at the motel, the manager said North had checked out about 10 days earlier.

McCoin reported North to the police as a parolee at large. North came to the parole office on July 6 for a medical appointment, but McCoin did not see him. When North came in for another medical appointment on July 13, McCoin arrested him for violating his parole. North admitted to McCoin that he had not been staying at the Garden Motel, and had not reregistered with the police department. The only registrations the Redwood City police had for North in June 2000 were those for the Garden Motel on June 1 and June 9.

North was recommitted to prison for the parole violation. After he had served his time for that violation, McCoin spoke to the police about North's failure to reregister when he left the Garden Motel in June. On November 30, 2000, an officer interviewed North at the parole office. North told the officer he had decided to leave the Garden Motel and live on the streets because the motel was a "hot spot" for criminal activity and he was trying to "stay clean." He admitted he had known he was violating his parole and the registration requirements. He had no excuses for failing to notify the police or his parole agent about his change of residence. However, when the officer told North he could have registered as a transient, North responded that he would have been required to give an address, and he had no address.

North testified that he had understood he was supposed to inform the police when he left the Garden Motel. He said: "I knew at that time it was the wrong thing to do, but under the circumstances I just wanted to get out of Redwood City period. I knew that I was doing something illegally that I shouldn't have been doing. And I felt deep in my heart I just didn't feel like staying there." Asked where he spent his nights between June 24 and July 13, North answered: "Some nights I'll sleep on the side of freeways. Some nights I'll walk around half of the night, sleep at bus stations. Some nights I'll stay with a friend I met along the way." He went "back and forth" between Redwood City and San Mateo. He felt he was in a "Catch-22 situation" regarding registration, because if he went to the police he would either be arrested for failing to register, or told to go to a shelter, and McCoin

had told him he could not register at a homeless shelter.[2] North said he thought he could "make everything okay" by registering as a transient during the period between July 6 and July 13, but he had "no idea" what address he might have given.

The jury convicted North of failing to register as a sex offender under section 290, subdivision (a)(1), and failing to inform the authorities of his new address under subdivision (f)(1). The court sentenced North to a term of 25 years to life under the "Three Strikes" law.

## DISCUSSION

North has raised a variety of claims on appeal. In a supplemental brief, he argues that section 290 is unconstitutionally vague. Our resolution of that issue is dispositive. Therefore, we do not address his other arguments.

North challenges the requirements that a sex offender who lacks a residence must register in the jurisdiction in which he "is located" (§ 290, subd. (a)(1)(A)), and inform the authorities of his new "location" after a change of "location" (§ 290, subd. (f)(1)). He claims these terms "ha[ve] no fixed meaning such that defendant can know what information he is expected to disclose and place[] excessive discretion in law enforcement for [their] interpretation." (*People v. Sanchez* (2003) 105 Cal.App.4th 1240, 1244 [130 Cal.Rptr.2d 219].) North's request for supplemental briefing on the vagueness issue was prompted by the publication of *Sanchez*, in which the court held that a probation condition requiring the disclosure of "areas frequented" by the defendant was impermissibly vague. (*Ibid.*)

The Attorney General attempts to distinguish *Sanchez* on the ground that section 290 provides a statutory context for "located" and "location" that clarifies their meaning. Because those terms are used as alternatives to "residence" and "resides," the Attorney General contends they must be understood to refer to the place a transient offender spends the night. However, even under such a limiting construction we find the statutory requirements governing changes of "location" and registration at all "locations" impossible to apply with reasonable certainty. Examination of the statutory context in this instance only serves to underscore the imprecision of these terms. Before turning to the statute and the history of its amendments relating to transient sex offenders, we review the principles of the vagueness doctrine.

---

[2] McCoin was not asked whether he had forbidden North from registering at a shelter. North's counsel did ask generally whether McCoin had ever talked to North about staying at the transient shelter in Redwood City. McCoin replied: "I don't remember saying it. But I say that so often I can't say I did [*sic*]."

## 1. *Due Process Standards of Clarity*

"The due process concept of fair warning is the underpinning of the vagueness doctrine, which 'bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." ' (*United States v. Lanier* [(1997)] 520 U.S. 259, 266 [137 L.Ed.2d 432, 117 S.Ct. 1219], quoting *Connally v. General Construction Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 46 S.Ct. 126]; *Lanzetta v. New Jersey* (1939) 306 U.S. 451, 453 [83 L.Ed. 888, 59 S.Ct. 618] ['No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'].) Recently, the United States Supreme Court had this to say on the topic: 'Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement.' (*Chicago v. Morales* (1999) 527 U.S. 41, 56 [144 L.Ed.2d 67, 119 S.Ct. 1849].)" (*People v. Castenada* (2000) 23 Cal.4th 743, 751 [97 Cal.Rptr.2d 906, 3 P.3d 278].)

"Two principles guide the evaluation of whether a law . . . is unconstitutionally vague. First, 'abstract legal commands must be applied in a specific context. A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness.' (*People ex rel. Gallo* [*v. Acuna* (1997)] 14 Cal.4th [1090,] 1116 [60 Cal.Rptr.2d 277, 929 P.2d 596].) Second, only reasonable specificity is required. (*Id.* at p. 1117.) Thus, a statute 'will not be held void for vagueness "if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources." ' (*Ibid.*)" (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630 [78 Cal.Rptr.2d 66].)

■ Terms that might otherwise be considered vague may meet the standard of reasonable certainty when considered in context with other terms, and in view of the legislative purpose. (*People ex rel. Gallo v. Acuna, supra,* 14 Cal.4th at pp. 1116–1118.)

## 2. *Section 290 and Transient Sex Offenders*

The purpose of section 290 is to assure that sex offenders are readily available for police surveillance, because they are deemed likely to commit similar offenses in the future. (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101]; *People v. Castellanos* (1999) 21 Cal.4th 785, 796 [88 Cal.Rptr.2d 346, 982 P.2d 211].) The registration system

also provides information regarding high risk offenders that may be disclosed to the public, making it doubly important to maintain accurate registration information. (§ 290, subds. (m) & (n); § 290.4; *Wright v. Superior Court, supra,* 15 Cal.4th at p. 529.)

North acknowledges the legislative purpose of the 1997 amendments adding "location" requirements was to bring transient sex offenders, who have no "residence," within the scope of section 290. However, the particular requirements North was found to have violated, and others governing his registration as a transient offender, were added after 1997. We will set out the relevant terms of section 290 as they were framed in 2000, when North's violations occurred, footnoting the legislative history of the pertinent amendments:

"(a)(1)(A) Every person described in paragraph (2) [i.e., those required to register], for the rest of his or her life while residing in, *or, if he or she has no residence, while located within California* . . . shall be required to register with the chief of police of the city in which he or she is residing, *or if he or she has no residence, is located* . . . within five working days of coming into, or changing his or her residence or location within, any city . . . in which he or she temporarily resides, *or, if he or she has no residence, is located.*[3]

"(B) If the person who is registering has more than one residence address or location at which he or she regularly resides or is located, he or she shall register in accordance with subparagraph (A) in each of the jurisdictions in which he or she regularly resides or is located. If all of the addresses or locations are within the same jurisdiction, the person shall provide the registering authority with all of the addresses or locations where he or she regularly resides or is located.[4]

"(C) If the person who is registering has no residence address, he or she shall update his or her registration no less than once every 90 days in addition to the requirement in subparagraph (A), on a form as may be required by the Department of Justice, with the entity or entities described in subparagraph (A) in whose jurisdiction he or she is located at the time he or she is updating the registration.[5]

---

[3] The italicized language was added in 1997. (Stats. 1997, ch. 821, § 3.5.) The underlined language was added in 1998. (Stats. 1998, ch. 930, § 1.4.)

[4] Subparagraph (B) was added to subdivision (a)(1) in 1999. (Stats. 1999, ch. 901, § 1.5.)

[5] Subparagraph (C) was added to subdivision (a)(1) in 1997. (Stats. 1997, ch. 821, § 3.5.) In 2001, the updating period was shortened from 90 days to 60 days, and the following statement was appended: "It is the intent of the Legislature that efforts be made with respect to persons who are subject to this subparagraph who are on probation or parole to engage them in treatment." (Stats. 2001, ch. 843, § 1.3.) The statement of legislative intent was deleted the

"(D) Beginning on his or her first birthday following registration or change of address, the person shall be required to register annually, within five working days of his or her birthday, to update his or her registration with the entities described in subparagraph (A), including, verifying his or her name and address, *or temporary location*, and place of employment including the name and address of the employer, on a form as may be required by the Department of Justice."[6]

"(e)(1) . . .

"(2) . . . The registration shall consist of all of the following: . . .

"(E) Copies of adequate proof of residence . . . . If the person has no residence and no reasonable expectation of obtaining a residence in the foreseeable future, the person shall so advise the registering official and shall sign a statement provided by the registering official stating that fact. Upon presentation of proof of residence to the registering official or a signed statement that the person has no residence, the person shall be allowed to register . . . ."[7]

"(f)(1) If any person who is required to register pursuant to this section changes his or her residence address or location, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, the person shall inform, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location. The law enforcement agency or agencies shall, within three days after receipt of this information, forward a copy of the change of address or location information to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency or agencies having local jurisdiction of the new place of residence or location."[8]

"(g) Except as otherwise provided in paragraph (5) [violations of 90-day updating requirement by sexually violent predators], and *in addition to any other penalty imposed under this subdivision, any person who is required . . . to update his or her registration every 90 days and willfully fails to update*

---

next year, however, as it duplicated statements included in Penal Code provisions governing probation and parole. (Stats. 2002, ch. 17, § 1; see §§ 1202.7, 3000, subd. (b)(9).)

[6] The italicized language was added in 1997. (Stats. 1997, ch. 821, § 3.5.)

[7] Subparagraph (E) was added to subdivision (e)(2) in 1998. (Stats. 1998, ch. 930, § 1.4.)

[8] The underlined language was added in 1998. (Stats. 1998, ch. 930, § 1.4.)

*his or her registration is guilty of a misdemeanor and shall be punished by imprisonment in a county jail not exceeding six months. Any subsequent violation of this requirement . . . is also a misdemeanor and shall be punished by imprisonment in a county jail not exceeding six months.*"[9]

Thus, in 1997, when the Legislature first specifically addressed the problem of registering transient sex offenders, it did so by requiring registration in the jurisdiction where the offender is "located," an update of the registration every 90 days, and verification of the offender's "temporary location" as part of the annual registration update. Violation of the 90-day updating requirement was made a misdemeanor, an exception to the usual rule that willful violations of section 290 are felonies if the offender is required to register as a result of a felony sex offense conviction. (§ 290, subd. (g)(2).)

In 1998, the Legislature made the registration requirement of subdivision (a) and the notification requirement of subdivision (f) applicable upon a change of "location." These amendments significantly increased both the frequency with which transient offenders would likely be required to report to the authorities and the penalties to which they were exposed. Also in 1998, the Legislature provided that a transient offender must be allowed to register upon presentation of a signed statement declaring that he or she has no residence. Curiously, neither this nor any subsequent amendment to subdivision (e)(2), which specifies the information to be included in registrations, requires the provision of information regarding a transient offender's "location."

In 1999, the Legislature addressed the issue of multiple residences or "locations," mandating registration in each jurisdiction where a transient offender is "located" and requiring the offender to "provide the registering authority with all of the . . . locations where he or she regularly resides or is located."

3. *Analysis*

Tracking sex offenders who are transient is both an important statutory objective and one fraught with practical difficulties. The Legislature has chosen to pursue this objective by requiring offenders who have no residence to register where they are "located" within five working days (including multiple "locations" where they may be "regularly" found), reregister and provide notification whenever they change "location," update their registration every 60 days (formerly, every 90 days), and verify their "temporary location" on an annual basis.

---

[9] The italicized language was added in 1997. (Stats. 1997, ch. 821, § 3.5.) In 2001, the reference to the 90-day update period was amended to specify a 60-day period. (Stats. 2001, ch. 843, § 1.3.)

North contends these requirements are vague because the Legislature failed to specify what sorts of places qualify as "locations," which part of the day the offender must spend in a "location," how long, frequently, or regularly he must occupy a "location" before registration is required, and how precisely the "location" must be identified. The Attorney General construes "location" as parallel with "residence," to mean the place where a transient offender "spends the night." The Attorney General argues it is reasonable and practical to require transient offenders to identify the general area where they will be sleeping, with sufficient specificity to enable the police to find them. "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. [Citation.]" (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

The Attorney General fails to grapple with the difficult element of time— how many nights, and for how long each night, must an offender spend in a particular place before it becomes a registerable "location"? The Redwood City police told North he had to tell them where he would sleep each night, but that requirement cannot be squared with the five-day grace period allowed for registration. In any event, what is the use of registering a briefly occupied "location"? The utility of obtaining registrations for places slept in only for a night or two, and perhaps never returned to, is so questionable as to cast serious doubt the Legislature intended such fleetingly relevant and rapidly accumulating information to be part of the registration scheme, which includes the forwarding of "location" information to and from the Department of Justice. In many cases, the information forwarded would be obsolete by the time it was received.

The registration grace period has been adopted as a point of reference for defining the term "residence" in section 290. In *People v. McCleod* (1997) 55 Cal.App.4th 1205 [64 Cal.Rptr.2d 545] (*McCleod*), the court construed "residence" to mean "a place where [the offender] is living or temporarily staying for more than the limited time defined by the statute." (*Id.* at p. 1219.) The "limited time" to which the court referred was the grace period, which was ten days at the time of McCleod's offense. The *McCleod* definition implicitly acknowledges that a "residence" has an address (McCleod was convicted of failing to report a change of address under section 290, subdivision (f)), which is consistent with the repeated references to "residence address" in the statute. The *McCleod* court interpreted section 290 before it was amended to include "location" as an alternative to "residence," but its definition of "residence" is a sensible one and presumably has been approved by the Legislature. (*People v. Massie* (1998) 19 Cal.4th 550, 568 [79 Cal.Rptr.2d 816, 967 P.2d 29].)

Therefore, a possible interpretation under the Attorney General's approach would be to construe "location" as a place without an address where the offender "spends the night" for more than five working days. However, such a rule creates its own ambiguities. Some transients sleep during the day rather than at night. If the Attorney General means to refer to where an offender sleeps, do daytime naps count? If the offender "spends the night" wandering the streets, what is his "location"? As for those transient offenders who do sleep at night, the statutory goal of tracking their location would be frustrated whenever they spend less than five working days sleeping in the same place. Offenders would not be subject to the registration requirements if they stayed on the move indefinitely, a result certainly not intended by the Legislature.

At oral argument, the Attorney General suggested section 290 requires a transient offender to establish a regular sleeping place. We reject that notion. Nothing in the statute indicates the Legislature intended to make transient offenders confine their nightly sojourns to particular "locations," nor is it practical or reasonable for a court to impose such a requirement by way of statutory construction.[10]

In light of these considerations, we do not believe the Legislature meant to limit the application of the term "location" to places where transient offenders sleep at night. Alternatively, the Legislature's use of the more general terms "located" and "location" might be understood as an attempt to extend the registration requirements to include places other than where the offender sleeps or resides, such as a place of employment, or a place where the offender spends time at leisure or engaged in other activities. This is the most natural sense of the term "location," denoting any place physically occupied on a regular basis.

However, the registration of every particular location at which an offender is regularly present is not feasible, and even in theory would lead to multiple and often meaningless registrations. A transient offender may occupy many locations on a more or less regular basis during the course of a day, week, or month. Section 290 provides no hint as to which locations the offender must provide to the police for purposes of facilitating surveillance. It would be impossible to provide them all, and a good faith effort to comply with the literal terms of the statute would clog the registration system. To choose certain locations would expose the offender to the risk of prosecution for omitting others. "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative

---

[10] Whether a statute requiring transients to occupy regular sleeping locations would survive a constitutional challenge is a question we leave for another day.

department of government." (*United States v. Reese* (1875) 92 U.S. 214, 221 [23 L.Ed. 563]; accord, *Kolender v. Lawson* (1983) 461 U.S. 352, 358, fn. 7 [75 L.Ed.2d 903, 103 S.Ct. 1855].)

Furthermore, the breadth of the "location" provisions of section 290 invites arbitrary determinations by the registering authorities, as in this case, where North was told he had to report daily to the police the place he would be spending the night. (Cf. *Kolender v. Lawson, supra,* 461 U.S. at p. 361 [statute requiring persons walking public streets to provide "credible and reliable identification" to police was unconstitutionally vague because it encouraged arbitrary enforcement].)

■ Accordingly, we hold that when the Legislature used "location" to require registration or notification of particular places where an offender may regularly be found, it failed to provide enough specificity for either the offender or the authorities to understand what the statute demands. The provisions of section 290, subdivisions (a)(1)(A) and (f)(1) requiring reregistration and written notification upon a change of "location" are void for vagueness, as is the subdivision (a)(1)(B) requirement that a transient offender specify all the places where he is regularly located within a jurisdiction. Also void is the provision of section 290, subdivision (a)(1)(D) requiring annual verification of a transient offender's "temporary location."

■ On the other hand, when the Legislature used "located" as a basis for identifying the jurisdictions in which registration is required, it provided the offender and the authorities with a reasonably certain registration requirement. It is possible to ascertain when a transient offender is within a jurisdiction, though it cannot be determined which locations within the jurisdiction must be separately identified, or when movement within the jurisdiction constitutes a change of location. Thus, the provisions of section 290, subdivision (a)(1)(A) requiring registration in the jurisdiction where an offender without a residence is "located," and the provision of subdivision (a)(1)(B) requiring registration in all jurisdictions where such an offender is regularly "located," are valid.

■ "Located" for purposes of these requirements means present in the jurisdiction on a regular basis. What constitutes a "regular basis" in this context must be considered in light of the legislative intent to include offenders who are transient, and thus likely to be less "regular" in their routines than offenders with residences. The five day grace period for registration gives an indication of the time frame contemplated by the Legislature, as recognized in *McCleod, supra,* 55 Cal.App.4th 1205. By the same logic employed in *McCleod,* we conclude an offender is "located" in a jurisdiction for purposes of registration when he is present in the jurisdiction

on five consecutive working days. He has five working days from the time he first "comes into" a jurisdiction to register as a transient, if he is in the jurisdiction on each of those days. (§ 290, subd. (a)(1)(A).)

Our interpretation of the statute accounts for offenders who change status from resident to transient, as did North in this case, or from transient to resident. The reregistration requirements in these situations pass muster under the vagueness doctrine, so long as transient offenders are not required to provide the authorities with statutorily unspecified "locations." An offender registered as a resident who becomes transient has five working days to reregister as a transient under the terms of section 290, subdivisions (a)(1)(A) and (e)(2)(E). A transient offender who acquires a place to stay with an address for a period of five working days must reregister as a resident. The notification requirements of subdivision (f) apply only to information regarding changes of address, but any offender who is registered as a transient for 60 days is subject to the updating requirement of subdivision (a)(1)(C).

We recognize our construction of section 290 leaves in place an imperfect system for keeping track of transient sex offenders. While it is more inclusive than the "sleeping place" interpretation we have considered and rejected, it still fails to account for the most transient (and potentially most evasive) offender. One who for five working days sleeps in a park in San Mateo and spends the day walking the streets of Redwood City would have to register as a transient in both jurisdictions by the fifth day. But an offender who spends his time in San Mateo for four working days or less, then relocates to Redwood City for a similar period, and so forth, would escape the registration requirements as they are currently framed.

We can do no better with the statute in its present form. Section 290 simply fails to include the transient offender who does not establish the "regular location" contemplated by subdivision (a)(1)(B). We have attempted to save the fundamental registration requirements for transient offenders by applying a reasonable and practical statutory construction, consistent with our judicial function. (See *People ex rel. Gallo v. Acuna, supra,* 14 Cal.4th at p. 1117.) But since these requirements do not apply to offenders who move frequently from jurisdiction to jurisdiction, we strongly encourage the Legislature to re-examine the provisions of section 290 and enact specific registration requirements that will apply to all transient offenders.

It may be that transients are so differently situated from offenders with residences that the current address-based registration requirements cannot be adapted to fit their circumstances. A separate scheme, perhaps in a separate section or subdivision, may be advisable. Transient offenders could be required to designate locations where they can be found at certain times, or to

register at specified intervals with the law enforcement agency in whichever jurisdiction they are located when the interval expires. Something like the latter approach has already been taken in section 290, subdivision (a)(1)(C), which requires registration updates by transient offenders every 60 days. The updating requirement yields less information about the specific whereabouts of transient offenders than is available for those with residences, but ensures that the authorities will see transient offenders more frequently. We note, however, that the current version of subdivision (a)(1)(C) presumes an existing registration which would be "updated."[11]

We leave the weighing of alternative solutions to the Legislature. It is uniquely within the legislative province to collect information and ideas for developing a more comprehensive registration system for transient sex offenders.

### 4. *North's Case*

■ North's conviction under section 290, subdivision (f)(1) must be reversed, because the requirement that he provide the police with his new "location" was too vague to be constitutionally enforced. His conviction under subdivision (a)(1)(A) for failing to register after leaving the Garden Motel must also be reversed. The provisions governing reregistration after a change from residential to transient status are not unconstitutionally vague, as we have construed them. However, the vague aspects of the statute infected the information the police gave North regarding his registration obligations, according to the undisputed evidence. North was *not* required by the statute to register daily, or to provide the address where he would be sleeping each night. Having been so misinformed, North lacked the actual knowledge of the registration requirements our Supreme Court has held necessary to establish a willful violation of section 290. (*People v. Garcia* (2001) 25 Cal.4th 744, 752–754 [107 Cal.Rptr.2d 355, 23 P.3d 590].)

### DISPOSITION

The judgment is reversed.

Corrigan, Acting P. J., and Pollak, J., concurred.

**POLLAK, J.**—I concur in the thoughtful majority opinion, which has correctly demonstrated the hopeless ambiguity that has been created by

---

[11] Subdivision (a)(1)(C) also authorizes the Department of Justice to create a form to be completed by transients, which might require the offender to provide additional specificity about his customary whereabouts that would assist the police in locating him if necessary.

having attempted to engraft on the provisions requiring certain sex offenders to register their residence the requirement that offenders with no residence register their undefined "location." Moreover, I believe that the majority opinion preserves as much of the statute as can be given an intelligible interpretation in this respect, by holding that a transient, or homeless, offender must register in those jurisdictions in which he (or she) is located for at least five working days, even though he cannot be required to specify every "location" at which he may be found or every time he changes his "location." I join in urging the Legislature to revisit these provisions and to consider enacting separate provisions which comprehensibly specify the registration requirements of an offender without a residence. I also join in the implicit suggestion contained in footnote 11 of the lead opinion (*ante*, at p. 636), that the Department of Justice consider exercising the authority presently conferred by subdivision (a)(1)(C) of Penal Code section 290 by developing an appropriate form for transient offenders to complete, that will provide appropriate additional information about the offender's customary whereabouts and that can be reasonably understood and completed by the offender.

I write separately to express one caveat to the majority opinion, that may be more theoretical than real, but which I believe further underscores the need for legislative clarification. I agree with the majority opinion that " 'Located' for purposes of these requirements means present in the jurisdiction on a regular basis." (Maj. opn. *ante*, at p. 634.) I also agree with the statement that "[o]ne who for five working days sleeps in a park in San Mateo and spends the day walking the streets of Redwood City would have to register as a transient in both jurisdictions by the fifth day." (*Id.* at p. 635.) However, I believe that implicit in these statements is the additional requirement that the offender must be present in the particular jurisdiction for some appreciable period of time on each of those days. I do not believe that a transient offender who commutes daily between San Francisco and San Jose must register in every jurisdiction through which the offender passes. Although only the Legislature has the ability to establish a fixed and precise time period, I would suppose that such a period would be measured in hours rather than minutes. I do not understand the majority opinion necessarily to disagree with this view, but simply to leave to another day issues that would arise if it were shown that a transient offender was present every day in a particular jurisdiction but only fleetingly or in transit. Such issues may never arise if the statute is promptly clarified.

In this same regard, I would also emphasize the obvious fact that transient offenders may not always be aware of the jurisdiction that they are within at any particular time. It is one thing to expect a person to know the jurisdiction within which their residence is located. It is another to expect a transient to be aware of the imaginary lines that separate one municipality from another and from the unincorporated areas of the county, and that separate one county

from another. In view of the importance to the statutory scheme that the offender be given clear notice of his obligations under the statute, this is another difficulty that must be addressed if there is to be a workable registration scheme for transient offenders. It is a factor that suggests consideration of a single statewide registration system.

On October 20, 2003, the opinion was modified to read as printed above.