**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM HENRY COUSINS,
  *Plaintiff-Appellant,*

v.

BILL LOCKYER, (former) Attorney
General of California, in his
official capacity; RICHARD RIMMER,
(former) Director of the California
Department of Corrections and
Rehabilitation (CDCR), in his
individual capacity; ROSEANNE
CAMPBELL, (former) Warden of
Mule Creek State Prison, in her
individual capacity; and JOHN/JANE
DOES 1 through x,
  *Defendants-Appellees.*

No. 07-17216

D.C. No.
CV-07-01165-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
April 13, 2009—San Francisco, California

Filed June 15, 2009

Before: Thomas G. Nelson, Andrew J. Kleinfeld, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

7139

## COUNSEL

Dennis Cunningham & William Gordon Kaupp, Law Offices of Dennis Cunningham, San Francisco, California, for the plaintiff-appellant.

Wilfred T. Fong, Office of the California Attorney General, Oakland, California, for the defendants-appellees.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

William Henry Cousins (Cousins) appeals from the dismissal of his 42 U.S.C. § 1983 complaint against several California state officials, in which he alleges that he was wrongfully imprisoned for an additional nineteen months after a California appellate court overturned the statute under

which he was incarcerated. He argues that the officials breached their alleged duties to monitor whether his sentence was void under the invalidated statute and to take steps to effectuate his release. He also asserts that the district court erred in determining that the former Attorney General is entitled to absolute prosecutorial immunity, and that the remaining defendants are entitled to qualified immunity.

We affirm the district court's judgment regarding Cousins' federal claims because they fall within the scope of the former Attorney General's duties as a criminal prosecutor, and because Cousins cannot show that any federal constitutional right that may have been violated by the remaining defendants was clearly established in law. However, we reverse and remand Cousins' state causes of action. His state false imprisonment claim is not subject to any state statutory immunity; his remaining state claims are all derivative of that claim; and none of his state claims is subject to the federal common law doctrine of qualified immunity.

## FACTUAL AND PROCEDURAL BACKGROUND

Cousins, a former California prison inmate, filed this § 1983 action against several state officials, alleging that he was wrongfully incarcerated beyond the time he should have been released. The defendants are Bill Lockyer, the former state Attorney General (AG), Richard Rimmer, the former director of the California Department of Corrections and Rehabilitation (CDCR director), and Roseanne Campbell, the former warden of Mule Creek State Prison (MCSP warden), all of whom are being sued in their individual capacities. Cousins also names various John/Jane Doe employees of the Attorney General's Office "who had the knowledge and/or responsibility to ensure [his] incarceration was ended by taking steps to cause [his] release."

Cousins was arrested in June 1999, in San Jose, California, and charged under California Penal Code § 290(g)(2) with

failure to register with the police department within five days of entering the city. In October 1999, the Santa Clara District Attorney filed a two-count information against Cousins, alleging that (1) he failed to register as a sex offender with a felony conviction, as required by California Penal Code § 290(a)(1)(A); and (2) he failed to inform law enforcement of his new address, as required by California Penal Code § 290(f)(1).

In January 2000, a jury convicted Cousins on Count Two, and he received a sentence of twenty-five years to life in prison under California's "three strikes" law. His conviction was affirmed on appeal in November 2002, and a petition for rehearing by the California Court of Appeal, Sixth Appellate District, was denied later that month. The California Supreme Court denied Cousins' petition for review in February 2003.

In October 2003, the California Court of Appeal, First Appellate District, decided *People v. North*, 5 Cal. Rptr. 3d 337 (Cal. Ct. App. 2003), in which the court declared California Penal Code § 290(f)(1), the statute under which Cousins had been incarcerated, unconstitutionally vague. The state did not seek review of the *North* decision.

In January 2004, Cousins filed a writ of habeas corpus in the California Supreme Court, arguing that he was entitled to release because the statute under which he was imprisoned had been declared unconstitutional. More than a year later, the state responded to Cousins' petition, and argued that even though California Penal Code § 290(f)(1) had been declared unconstitutionally vague, it was still valid in his case. The California Supreme Court issued an order to show cause upon the CDCR director, and the Attorney General's Office subsequently agreed that Cousins' writ should issue. Cousins was released from prison in June 2005, approximately one year and seven months after the North court overturned California Penal Code § 290(f)(1).

In February 2007, Cousins filed a complaint in federal district court, alleging that his extended incarceration violated several state laws and his civil rights under § 1983. His complaint named as defendants the AG, the CDCR director, and the MCSP warden, as well as the State of California, the California Department of Corrections, and the California Department of Justice. Cousins amended his complaint in August 2007, dropping the state entities as defendants.

Cousins' first amended complaint alleges that the AG, the CDCR director, and the MCSP warden, in their individual capacities, breached specific duties owed to him. Cousins asserts that the AG "had a duty to inform the trial court in . . . Cousin[s'] conviction and various officials in the CDCR including, but not limited to, the Director of the CDCR, as well as the Warden of Mule Creek." Cousins further alleges that the CDCR director and the MCSP warden had:

> a duty to discover when statutes in the Penal Code are invalidated, . . . a duty to discover who was incarcerated under the invalid statute, as well as a duty to determine the effect on all sentences affected by the change in law, . . . [and] to inform the trial court that Plaintiff['s] sentence was no longer authorized by law.

Cousins states that in breaching these duties, the defendants violated his federal and state constitutional rights to due process, his federal and state constitutional rights to freedom from unreasonable seizure, and his federal constitutional right to freedom from cruel and unusual punishment. He also alleges state claims of negligence, negligent infliction of emotional distress, false arrest and imprisonment, and violation of the Bane Act.

The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in September 2007. In November 2007, the district court issued a written order

granting the defendants' motion on the grounds that the AG is entitled to absolute prosecutorial immunity, and that the remaining defendants are entitled to qualified immunity. Cousins timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), as well as questions of statutory interpretation, de novo. *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Id.* at 1003. Although "conclusory allegations of law and unwarranted inferences are insufficient" to avoid a Rule 12(b)(6) dismissal, *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005) (citation, quotation marks, and alteration omitted), "a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face,' " *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

Cousins asserts that the district court erred in dismissing his first amended complaint based on its determinations that the AG is entitled to absolute prosecutorial immunity, and that the remaining defendants are entitled to qualified immunity.

### A.   Federal Claims

#### 1.   Federal Prosecutorial Immunity for the AG

[1] Cousins first argues that the district court erred in concluding that the AG is entitled to absolute prosecutorial immunity from the federal claims on the ground that he was

acting within the scope of his duties as a criminal prosecutor. A state prosecuting attorney enjoys absolute immunity from liability under § 1983 for his conduct in "pursuing a criminal prosecution" insofar as he acts within his role as an "advocate for the State" and his actions are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 410, 430-31 (1976). However, "absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in . . . investigative or administrative tasks." *Van De Kamp v. Goldstein*, 129 S. Ct. 855, 861 (2009) (quoting *Imbler*, 424 U.S. at 431 n.33). In those instances, only qualified immunity is available. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). To determine whether an action is judicial, investigative, or administrative, we look at " 'the nature of the function performed, not the identity of the actor who performed it.' " *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

Here, Cousins alleges that because the California Attorney General's Office handled the *North* appeal that resulted in the invalidation of California Penal Code § 290(f)(1), the AG is civilly liable for his failure to notify the trial court and CDCR officials of the change in the law "so that [Cousins'] sentence could be changed accordingly." He also alleges that the AG, along with the other defendants, "failed to maintain an institutionalized practice that follows changes in the law that directly affect the incarceration of persons in their custody and to address those changes . . . by informing the trial court." These asserted duties are not "investigative" in nature, as they do not involve the AG performing the evidence gathering and witness interviewing functions "normally performed by a detective or police officer." *See Buckley*, 509 U.S. at 273. Nor, contrary to Cousins' argument, are they "strictly administrative and ministerial," such that the AG may avail himself only of a qualified immunity defense.

**[2]** First, regardless of whether the AG "knew or should have known" about the *North* decision and its impact on Cousins' individual conviction, the AG could not have effectuated Cousins' post-conviction release merely by *notifying* or *informing* the sentencing court or CDCR officials of that information. Rather, the AG would have had to *petition* the court for an order directing such a release—an action entirely dependent upon his role as an advocate for the State.[1] *See Guzman-Rivera v. Rivera-Cruz*, 55 F.3d 26, 29-31 (1st Cir. 1995) (holding that "the [state official] defendants['] fail[ure] to go to court as prosecutors to undo [the plaintiff's] conviction" after a post-conviction investigation established his innocence did not strip them of prosecutorial immunity, because such a decision was "at the heart of the prosecutorial function"); *see also Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984) (holding that "prosecutors are absolutely immune from civil suits alleging wrongdoing with regard to post-litigation . . . handling of a case"); *In re Sandel*, 412 P.2d 806, 810 (Cal. 1966) ("The correction of an act of sentencing in excess of jurisdiction of the court is just as much of a judicial function as the act of sentencing itself, and is likewise beyond the authority of . . . any other administrative body.").

**[3]** Second, to the extent Cousins faults the AG for failing to maintain an institutionalized information system for tracking all California appellate decisions with a direct bearing on individual prisoners' convictions (an obligation for which Cousins cites no legal authority), the Supreme Court has indicated that, even if properly characterized as an attack on an office's administrative procedures, such a challenge does not strip a supervising prosecutor of absolute immunity. *See Van De Kamp*, 129 S. Ct. at 861-64. Rather, supervising prosecu-

---

[1]This conclusion is buttressed by the *Imbler* Court's observation that the potential for § 1983 liability could also undermine a prosecutor's exercise of his post-conviction ethical duty "to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction." 424 U.S. at 427 n.25.

tors retain absolute immunity regarding decisions to create information management systems where, as here, "determining the criteria for inclusion or exclusion requires knowledge of the law," and where, as here, the information is relevant only insofar as it relates to the prosecution of a particular case —in this instance, the AG's distinctly prosecutorial function of going to the sentencing court to undo Cousins' conviction. *See id.* at 862-64. As a result, we hold that the district court properly granted the AG prosecutorial immunity from Cousins' § 1983 claims.

## 2. Qualified Immunity for the Remaining Defendants

[4] Cousins next argues that the district court erred in determining that the remaining defendants are entitled to qualified immunity from the federal claims on the ground that he cannot show that any constitutional right that may have been violated was clearly established in law. Qualified immunity protects government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). We consider qualified immunity using the two-step inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001).[2] First, we decide whether the alleged facts make out a violation of a constitutional right. *Id.* at 201. If so, we then decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Id.* The inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case." *Id.* In addition, for a right to be clearly established, its contours " 'must be sufficiently clear that a reasonable official would understand that what he is doing

---

[2]The Supreme Court recently revisited *Saucier* and concluded that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

violates that right.' " *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

**[5]** In this case, the remaining defendants fully agree with Cousins that he has a broad federal constitutional right to be free from wrongful incarceration.[3] *See, e.g.*, *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 246 (1972) (holding that continued incarceration after the lawful basis for custody expires violates due process under the Fourteenth Amendment); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (holding that deliberately indifferent detention of a person beyond the term permissible by law constitutes cruel and unusual punishment proscribed under the Eighth Amendment). However, as the Supreme Court has explained:

> [I]f the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of [the *Harlow* decision]. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights . . . . It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense.

*Anderson*, 483 U.S. at 639-40 (citations omitted). In other words, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine

---

[3]Although Cousins' first amended complaint asserts unreasonable seizure allegations under the Fourth Amendment, he fails to discuss or even identify that constitutional claim in his brief. As a result, he has waived that argument on appeal. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988) (noting that "[i]t is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned").

if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Here, Cousins offers no decisional, statutory, or other legal basis to suggest that a reasonable official standing in the defendants' shoes would have any way of knowing that by failing to personally check all California appellate court decisions for changes in the law, failing to apply these changes to individual inmates statewide, and then failing to contact the appropriate sentencing courts, he or she was violating Cousins' constitutional rights.

**[6]** Although Cousins argues that "[t]he CDCR operations manual is replete with references which make clear that the duties and procedures it prescribes encompass the activities which are necessary to avoid the deprivation of liberty [he] suffered," the remaining defendants are entitled to qualified immunity from the federal claims because state departmental regulations do not establish a federal *constitutional* violation. *See Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right . . . .")); *see also Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986) ("[A]llegations about the breach of a . . . regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right.").

Finally, Cousins' argument that the district court erred in dismissing the federal claims against the remaining John/Jane Doe defendants before they could be identified and impleaded through the discovery process is misplaced. Since Cousins has failed to identify, at the appropriate level of specificity, any clearly established constitutional right that has been violated, discovery would be futile. Accordingly, we conclude that the district court properly granted the remaining defendants qualified immunity from Cousins' § 1983 claims.

### B. State Claims

### 1. State Prosecutorial Immunity for the AG

**[7]** Cousins also contends that the district court erred in granting the AG state prosecutorial immunity from the state claims. In determining that the AG enjoyed such immunity, the district court relied on California Government Code § 821.6, which states that "[a] public employee is not liable for injury caused by his . . . prosecuting any judicial . . . proceeding within the scope of his employment, even if he acts maliciously and without probable cause." However, the California Supreme Court has expressly held that neither the immunity afforded by California Government Code § 821.6, nor that provided by any other state governmental immunity provision, applies to a false imprisonment claim brought pursuant to California Government Code § 815.6. *Sullivan v. County of L.A.*, 527 P.2d 865, 867-72 (Cal. 1974). We therefore hold that the district court erred in applying California Government Code § 821.6 to Cousins' state false imprisonment claim against the AG.

**[8]** In such instances, both our precedent and that of the California Supreme Court require reversal not only of the state false imprisonment claim, but also of the other, related state causes of action. In *Martinez v. City of Los Angeles*, we reversed in part summary judgment against a plaintiff who had been detained in Mexico for fifty-nine days after "the LAPD falsely had him arrested by knowingly or recklessly providing false information to the Mexican authorities . . . [and] allowed him to remain in jail in Mexico after they knew or should have known that he was the wrong man." 141 F.3d 1373, 1379 (9th Cir. 1998). We held that the LAPD could not be liable for providing false information, because such a claim is akin to malicious prosecution, a claim for which government officers are immune under California Government Code § 821.6. *Id.* at 1379-80. But we also held that § 821.6 immunity did not apply to the prolonged detention claim, which

was akin to a false imprisonment claim. *Id.* at 1380-81. We also reversed summary judgment on the state law negligence and negligent infliction of emotional distress claims to the extent they were "base[d] . . . on the same facts as his false imprisonment claim" and "[we]re derivative of the false arrest and false imprisonment claims." *Id.* at 1381-82. We stated that "[b]ecause the false imprisonment claim grounded on prolonged detention survives summary judgment, these claims survive as well." *Id.* at 1382.

Similarly, in *Asgari v. City of Los Angeles*, the California Supreme Court affirmed a judgment finding state police officers liable for "false arrest *and related causes of action*." 937 P.2d 273, 275 (Cal. 1997) (emphasis added). Specifically, the court affirmed a finding of liability for both false arrest and intentional infliction of emotional distress incident to that false arrest, but reversed the amount of damages because the court had instructed the jury to consider the period of time after the false arrest had ended. *Id.* at 284.

**[9]** The same logic applies to this case. To the extent Cousins' negligence and negligent infliction of emotional distress claims are "based . . . on the same facts," "are derivative of," and are "related" to his false imprisonment claim, both *Martinez* and *Asgari* require that we reverse their dismissal as to the AG because California's statutory immunities do not apply. The state constitutional and Bane Act claims against the AG also survive because they are likewise "based on" and "derivative of" the state false imprisonment claim.

### 2.    State Immunities for the Remaining Defendants

**[10]** Finally, Cousins asserts that the district court erred in summarily dismissing his state claims against the remaining defendants pursuant to its qualified immunity analysis. We agree. California law is clear that " '[t]he doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees.' "

*Venegas v. County of L.A.*, 63 Cal. Rptr. 3d 741, 751 (Cal. Ct. App. 2007) (quoting *Ogborn v. City of Lancaster*, 124 Cal. Rptr. 2d 238, 246 (Cal. Ct. App. 2002)). California law is also clear that qualified immunity does not apply to state civil rights claims. *See id.* at 753 (holding that "qualified immunity of the kind applied to actions brought under 42 [U.S.C. § ] 1983 does not apply to actions brought under [the Bane Act]"). In other words, qualified immunity is a doctrine of *federal* common law and, as such, has no application to Cousins' *state* claims, which are subject only to *state* statutory immunities. *See Asgari*, 937 P.2d at 280 (noting that "[g]overnmental immunity for claims of violation of civil rights under section 1983 is not conferred expressly by statute, but is based upon a judicial gloss on section 1983," whereas "governmental immunity under California law is governed by statute").

As discussed above, Cousins' state false imprisonment claim and related state causes of action are not subject to any state statutory immunity. As with Cousins' state claims against the AG, therefore, we also reverse and remand his state claims against the remaining defendants for consideration on the merits.

## CONCLUSION

[11] We affirm the district court's judgment regarding Cousins' § 1983 claims because they fall within the scope of the AG's duties as an advocate for the State, and because Cousins has failed to show that any federal constitutional right that may have been violated by the remaining defendants was clearly established in law at the time of the alleged misconduct. However, we reverse and remand regarding Cousins' state causes of action. His state false imprisonment claim is not subject to any state statutory immunity; his remaining state claims are all based on that claim; and none of his state claims is subject to the federal common law doctrine of qualified immunity.

**AFFIRMED in part; REVERSED and REMANDED in part.**

Each party shall bear its own costs on appeal.