**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSEPHINE SMITH, an individual; A.S., a minor child, by and through her guardian ad litem, Josephine Smith, *Plaintiffs-Appellants*, v. CITY OF SANTA CLARA, a public entity, *Defendant-Appellee.* | No. 14-15103 D.C. No. 5:11-cv-03999-LHK OPINION |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted February 12, 2016
San Francisco, California

Filed November 30, 2017

Before: Mary M. Schroeder and Jacqueline H. Nguyen,
Circuit Judges, and Lynn S. Adelman,[*] District Judge.

Opinion by Judge Adelman

---

[*] The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

## SUMMARY**

### Civil Rights

The panel affirmed the district court's judgment, entered following a jury verdict, in favor of several police officers and the City of Santa Clara, in an action brought pursuant to 42 U.S.C. § 1983 alleging that police officers violated plaintiff's constitutional rights under state and federal law when they conducted a search of her home.

Santa Clara police officers, over plaintiff's objections, entered her home, without a warrant, to search for her daughter who was on probation and who police had probable cause to believe had just been involved in a theft of an automobile and a stabbing.

The panel held that once the government has probable cause to believe that a probationer has actually reoffended by participating in a violent felony, the government's need to locate the probationer and protect the public is heightened. The panel held that this heightened interest in locating the probationer was sufficient to outweigh a third party's privacy interest in the home that she shared with the probationer. The panel held that *Georgia v. Randolph*, 547 U.S. 103 (2006), which recognized a limitation on warrantless consent searches, was not directly applicable because the Supreme Court's probation-search cases did not rest on a consent rationale. Instead, the question was whether a warrantless probation search that affects the rights

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of a third party is reasonable under the totality of the circumstances. The panel held that under the totality of the circumstances, and the undisputed facts of this case, the warrantless search of plaintiff's home, over her objection, was reasonable as a matter of law. The panel further held that there was sufficient evidence at trial to permit the jury to find that officers had probable cause to believe that plaintiff's daughter lived at the residence.

## COUNSEL

Lauren R. Coatney (argued), Christine Peek, Matthew Schechter, and James McManis, McManis Faulkner, San Jose, California, for Plaintiffs-Appellants.

Sujata T. Reuter (argued) and Jon A. Heaberlin, Rankin Stock Heaberlin, San Jose, California, for Defendant-Appellee.

## OPINION

ADELMAN, District Judge:

Justine Smith was involved in the theft of a vehicle and the stabbing of its owner. During the course of their investigation of these crimes, the police learned that Smith was on probation and that the terms of her probation allowed warrantless searches of her person and residence. The police went to the house that she had reported as her residence. Josephine Smith, Justine's mother, answered the door.[1] The

---

[1] For clarity, we will refer to Justine and Josephine Smith by their first names.

officers, who did not have a warrant, told Josephine that they were there to conduct a probation search for Justine. Josephine refused to admit the officers to the home without a warrant. Despite her objection, the officers entered the home to search for Justine but did not find her.

Josephine and her minor granddaughter, A.S., sued several police officers and the City of Santa Clara, alleging that the search for Justine violated their constitutional rights under state and federal law. The jury returned a verdict for the defendants. The plaintiffs now appeal, arguing that under the Supreme Court's decision in *Georgia v. Randolph*, 547 U.S. 103 (2006), the search of Josephine's home was unreasonable as a matter of law because the undisputed facts showed that Josephine was physically present at the time of the search and refused permission to search.

## I.

## A.

On October 4, 2010, Vahid Zarei reported to the San Jose Police Department that his car had been stolen. Zarei told police that he had just given Justine Smith a ride in the car and discovered that his spare key to the vehicle was missing. On October 7, 2010, Zarei's friend found the car in Santa Clara, California. Zarei and his friend then drove to Santa Clara to retrieve the car. When they arrived, but before they could get to the car, Justine and an unknown male entered the car and drove away. Justine was the driver. Zarei and his friend followed the car in the friend's car. At some point the cars stopped and the unknown male exited Zarei's vehicle and stabbed Zarei in the stomach. The male got back into Zarei's car, and Justine drove away. Zarei was taken to the hospital with life-threatening injuries.

Santa Clara police officers investigated both the car theft and the stabbing. While at the hospital, they showed Zarei's friend a picture of Justine, and he identified her as the driver of the stolen car. The police then learned that in December 2009, a California court had placed Justine on probation for three years in connection with felony convictions for grand theft and forgery. As a condition of her probation, Justine agreed to warrantless searches of her residence.

The police contacted the probation department to determine Justine's whereabouts. On December 22, 2009, Justine reported her address to probation as 940 Gale Drive. This was the address of her mother's unit in a small, two-unit duplex. On January 6, 2010, Justine reported to the California Department of Motor Vehicles that her address was 942 Gale Drive, which was the address for the other unit in the duplex. In addition, two entries in a county database, one dated January 27, 2010, and the other dated May 14, 2010, listed Justine's address as 940 Gale Drive. Finally, on June 2, 2010, Justine once again reported to probation that her residence was 940 Gale Drive, but this time she added that she was in the process of moving out of her mother's house.

On October 10, 2010, officers began surveilling the Gale Drive duplex but did not see Justine. After waiting awhile, they knocked on the door to 940 Gale Drive and announced, "Probation Search. Open the door." Josephine opened the door, stated that Justine did not live at the residence, and demanded that the officers produce a search warrant. When the officers explained that they needed to conduct a probation search for Justine, Josephine became angry and refused to allow them to enter.

The officers entered the home despite Josephine's objections. They did not find Justine, but they found in the

garage a sofa with sheets lying on it, female clothing, and an unopened envelope addressed to Justine at the 940 Gale Drive address. Officers then told Josephine that they needed to search the 942 unit of the duplex, which was locked and, according to Josephine, rented to another tenant. When officers indicated that they might need to force entry, Josephine directed them to the key. Officers then searched the 942 unit but did not find Justine.

## B.

After the search, Josephine and A.S. sued the City of Santa Clara and the individual police officers involved in the search, alleging violations of their constitutional rights under 42 U.S.C. § 1983 and California's Bane Act, Cal. Civ. Code § 52.1,[2] along with several other state-law claims.[3] One of Josephine's claims was that the search of the duplex violated her Fourth Amendment right to be free from unreasonable searches and seizures. Josephine argued that the search was unreasonable because the officers had searched her home without a warrant or her consent. (She also challenged the manner in which the officers carried out the search, but we will not discuss that aspect of her claim, as it is not at issue in this appeal.)

The defendants moved for summary judgment on the Fourth Amendment claim. They argued that the warrantless search of the residence was permitted because Justine was on probation and the Supreme Court has held that officers

---

[2] The Bane Act provides a cause of action for individuals whose "rights secured by" federal or California law have been interfered with "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1(a)–(b).

[3] For simplicity, from this point on we will refer to Josephine as the sole plaintiff, even though her minor granddaughter is also a plaintiff.

may search a probationer's residence without a warrant if they have reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity. *See United States v. Knights*, 534 U.S. 112, 121 (2001). In opposition to the motion, Josephine argued that the Supreme Court's more recent decision in *Randolph* created an exception to the probation-search rule. In *Randolph*, the Court held that a warrantless search of a residence, when justified only by an occupant's consent to the search, is unreasonable as to a co-occupant when that co-occupant is physically present and objects to the search. 547 U.S. at 106. Josephine argued that, under *Randolph*, because she was present and objected to the search of her home, the search was unreasonable as to her.

The district court granted the defendants' motion for summary judgment on Josephine's § 1983 claim on the ground of qualified immunity, reasoning that it was not clearly established that *Randolph* created an exception to the probation-search rule. However, the court denied the motion for summary judgment on the Bane Act claim because qualified immunity of the kind applied to § 1983 claims does not apply to actions brought under the Bane Act. *See Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009). Thus, the court essentially allowed the federal Fourth Amendment claim to proceed to trial through the vehicle of the California Bane Act.

The Bane Act claim was tried along with some related claims arising out of the search. Over Josephine's objection, the district court did not instruct the jury that Justine's consent was insufficient to make the search reasonable if Josephine was present and objected to the search. Josephine also sought judgment as a matter of law on the ground that it was undisputed that she was present and objected to the

search and that therefore the search was unreasonable under *Randolph*. The district court denied the motion. The jury returned a verdict in favor of the defendants on all claims, and the district court entered judgment in their favor.

Josephine now appeals the judgment only as it relates to the Bane Act claim. She contends that the district court should have granted her motion for judgment as a matter of law because, under *Randolph*, her objection to the search required the officers to obtain a warrant before conducting a probation search for Justine. For the same reason, she argues that the district court should have instructed the jury to find the search unreasonable if it found that Josephine was present and objected to the search.

## II.

Josephine's challenges to both the jury instructions and the district court's denial of her motion for judgment as a matter of law turn on the same question of Fourth Amendment law: Is a warrantless search of a residence that the police have probable cause to believe is the residence of a probationer, and that is otherwise reasonable as to the probationer, unreasonable as to a non-probationer occupant of the residence who is present at the time of the search and refuses to consent to the search? We review the district court's resolution of this question of law de novo. *See Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (review of denial of judgment as a matter of law de novo); *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 784 (9th Cir. 2006) (review of whether the

district court's jury instructions misstate the law is de novo).**[4]**

## A.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted).  One exception to this principle is that the police generally may search a home without a warrant if they have obtained voluntary consent from the individual whose home is searched.  *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)).  Under this "voluntary consent" rationale, a search will also be valid against an "absent, nonconsenting person" so long as the police obtain the consent of a person who possesses common authority over the home with the absent person.  *United States v. Matlock*, 415 U.S. 164, 170–71 (1974).  In *Randolph*, the Supreme Court recognized a

---

[4] Although Josephine's Bane Act claim is based on alleged violations of both the Fourth Amendment and the California Constitution, we do not understand Josephine to be arguing that there are material differences between the federal and state constitutions regarding unreasonable searches and seizures.  That is, we do not understand her to be arguing that even if the search was reasonable under federal law, it could be deemed unreasonable as a matter of California state law, or vice versa.  Thus, in this opinion, we apply federal law and assume without deciding that the same result would obtain under state law.  *See Sacramento Cnty. Deputy Sheriffs' Ass'n v. County of Sacramento*, 59 Cal. Rptr. 2d 834, 845–46 (Ct. App. 1996) ("[C]ogent reasons must exist before a state court in construing a provision of the state Constitution will depart from the construction placed by the Supreme Court of the United States on a similar provision in the federal Constitution." (quoting *Raven v. Deukmejian*, 801 P.2d 1077, 1088 (Cal. 1990))).

limitation on warrantless consent searches of a home. In that case, the Court held that even if a person who apparently possesses common authority over a home consents to a warrantless search, the search is not reasonable as to a second occupant if that occupant is physically present and refuses permission to search. 547 U.S. at 120.

Another exception to the principle that warrantless searches of a home are unreasonable relates to persons who are on probation or parole. In *Griffin v. Wisconsin*, the Supreme Court found a search of a probationer's residence reasonable even though it was conducted without a warrant. 483 U.S. 868, 880 (1987). The search in that case was conducted pursuant to a state regulation that permitted any probation officer to search a probationer's home without a warrant as long as his supervisor approved and as long as there were "reasonable grounds" to believe that contraband would be found in the home. *Id.* at 870–71. In upholding the search, the Court noted that although a warrant was normally required to search a home, the state's interest in supervising a probationer gave rise to "special needs" that permitted "a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.* at 875. The Court then found that these special needs made the warrant requirement impracticable. *Id.* at 875–78.[5] The Court stated:

> A warrant requirement would interfere to an appreciable degree with the probation

---

[5] The Court also found that the special needs relating to the probation regime justified replacing the normal requirement of probable cause to believe that contraband would be found in the probationer's home with the lesser standard of reasonable grounds. *Griffin*, 483 U.S. at 878–80.

system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires. Moreover, the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct, and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create.

*Id.* at 876 (citations omitted).

Some years later, the Supreme Court, in *Knights*, found a warrantless search of a California probationer's home reasonable even though it was conducted by a sheriff's deputy rather than a probation officer and the purpose of the search was not to supervise the probationer but to investigate a specific crime. 534 U.S. at 121. The Court began by noting that, in *Griffin*, it analyzed the reasonableness of a warrantless search by a probation officer under its "special needs" cases. *Id.* at 117–18. In *Knights*, the Court declined to use the special-needs approach used in *Griffin*. *See id.* The Court also declined to analyze the reasonableness of the search under the "consent" rationale of cases such as *Schneckloth* despite recognizing that the California Supreme Court used that rationale in deeming similar probation searches reasonable. *Id.* at 118 (citing *People v. Woods*, 981 P.2d 1019 (Cal. 1999)).

Instead of using either the special-needs rationale or the consent line of cases, the Court in *Knights* examined whether the search "was reasonable under [the Court's] general Fourth Amendment approach of 'examining the totality of the circumstances,' with the probation search condition being a salient circumstance." *Id.* (citation omitted) (quoting

*Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). Under this approach, the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. *Id.* at 118–19. The Court determined that "Knights' status as a probationer subject to a search condition" informed both sides of the reasonableness balance. *Id.* at 119. On the individual-privacy side of the balance, the Court found that the probation condition significantly diminished Knights' reasonable expectation of privacy. *Id.* at 119–20. On the governmental interest side of the balance, the Court recognized that "the probationer 'is more likely than the ordinary citizen to violate the law.'" *Id.* at 120 (quoting *Griffin*, 483 U.S. at 880). The Court also found that "probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply." *Id.* The Court reasoned that the state's "interest in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen." *Id.* at 121. After balancing these respective interests, the Court concluded that a warrantless search of the home of a probationer subject to a search condition is reasonable as to the probationer if there is reasonable suspicion that criminal conduct is occurring.[6]

---

[6] The Court in *Knights* left open the possibility that the police can search a probationer's residence on less suspicion or even none at all.

*Id.* The Court determined that the governmental interests were sufficiently weighty to justify "an intrusion on the probationer's significantly diminished privacy interests." *Id.*

## B.

*Randolph* was a consent case. The Court held that when the only justification for a search of a residence is the consent given by a person with common authority over the premises, the search is unreasonable as to a second person who is physically present and refuses permission to search. 547 U.S. at 106. But the Supreme Court's probation-search cases do not rest on a consent rationale. Rather, *Griffin* used a "special needs" rationale, 483 U.S. at 875–76, while *Knights* expressly eschewed the California Supreme Court's consent rationale in favor of the "totality of the circumstances" approach, 534 U.S. at 118. Moreover, in a later case involving parole searches, the U.S. Supreme Court again expressly declined to employ a consent rationale. *See Samson v. California*, 547 U.S. 843, 852 n.3 (2006).

Before the Supreme Court decided *Randolph*, the California Supreme Court used a consent rationale to justify warrantless probation searches that affected third parties. *Woods* found a probation search of a residence reasonable as to a non-probationer co-occupant on the ground that the probationer's search condition qualified as consent.

---

*See Knights*, 534 U.S. at 120 n.6. We have since held that "a suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment." *United States v. King*, 736 F.3d 805, 810 (9th Cir. 2013) (leaving open whether the same is true for "probationers who have not accepted a suspicionless-search condition, or of lower level offenders who have accepted a suspicionless-search condition").

981 P.2d 1019, 1023–28 (1999). The court used the "common authority" principle recognized in *Matlock* to determine that the probationer's search condition rendered the search reasonable as to the non-probationer. *Id.* at 1024–25. Since *Randolph* was decided, however, the California Supreme Court has not considered whether a warrantless probation search of a residence would be unreasonable as to a present and objecting non-probationer co-occupant. Because we do not need to predict how the California Supreme Court would answer this question of federal law, we will not further explore whether that court's approach to probation-search cases is affected by *Randolph*. Rather, we apply the cases of the U.S. Supreme Court.

Under the Supreme Court's cases, probation searches are not analyzed as consent searches. Thus, *Randolph*, which creates an exception to the consent rule, is not directly applicable. Instead, the question is whether a warrantless probation search that affects the rights of a third party is reasonable under the totality of the circumstances. *See Knights*, 534 U.S. at 118–19. To answer this question, we balance the degree to which the search intrudes upon the third party's privacy against the degree to which the search is needed for the promotion of legitimate governmental interests. *Id.* at 119. A non-probationer, of course, has a higher expectation of privacy than someone who is on probation, and therefore the privacy interest in this case is greater than it would be if the search affected only the probationer. But we conclude that, under the facts of this case, the governmental interests at stake were sufficiently great that the warrantless search of the duplex over Josephine's objection was reasonable.

It is undisputed that the police knew, at the time of the search, that Justine was serving a felony probation term for

serious offenses. It is further undisputed that the police had probable cause to believe that Justine had just been involved in the theft of an automobile and a stabbing, and that she was still at large. As the Court recognized in *Knights*, one of the governmental interests justifying warrantless probation searches is the need to protect the public from the probationer, who is more likely than the ordinary citizen to reoffend. *Id.* at 121. Obviously, once the government has probable cause to believe that the probationer has actually reoffended by participating in a violent felony, the government's need to locate the probationer and protect the public is heightened. This heightened interest in locating the probationer is sufficient to outweigh a third party's privacy interest in the home that she shares with the probationer. Therefore, under the undisputed facts of this case, we conclude that the warrantless search of the home over Josephine's objection was reasonable as a matter of law.[7]

We stress that our conclusion is limited to the facts of this case, where the police had probable cause to believe that the probationer, who was on probation in connection with serious offenses, had just participated in a violent felony and was still at large. We express no view as to what would

---

[7] In our discussion so far, we have assumed that the police had probable cause to believe that the Gale Drive duplex was Justine's residence. However, this was a disputed issue at trial, and we note that a probation search of a residence is unreasonable if the police lack probable cause to believe that the probationer actually resides there. *See Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) (en banc), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc). Here, the jury was correctly instructed to find the search of the duplex reasonable only if the police had probable cause to believe that Justine resided there. Josephine contends that the evidence did not support the jury's conclusion that the police had such probable cause, but as we discuss below, the evidence was sufficient to support the verdict on this issue.

happen in a case in which the police conduct a search—over the objection of a present and objecting co-occupant—of a probationer's residence who is on probation for offenses that are neither violent nor serious, and who is not suspected of involvement in a subsequent offense.

## C.

Because under federal precedent probation and parole searches are not consent searches, and therefore *Randolph* does not directly apply to this case, it follows that the district court correctly denied the Josephine's motion for judgment as a matter of law, which sought judgment on the ground that Josephine's objection "trumped" any consent that Justine may have given as a term of her probation. The search was not automatically rendered unreasonable by Josephine's presence at the time of the search and refusal to grant permission to search. Moreover, under the undisputed facts, the governmental interests at stake were sufficient as a matter of law to make a warrantless probation search of the duplex reasonable over Josephine's objection. Therefore, the district court did not err in refusing to instruct the jury that Justine's consent was insufficient if Josephine was present and refused to consent to the search.

One aspect of the jury instructions deserves additional discussion. The instructions state that the search of the duplex without a warrant was reasonable provided that the defendants proved that "Justine Smith consented to the search as a probationer." As we have discussed, the Supreme Court does not consider warrantless probation searches reasonable because of the probationer's consent. Rather, the Court uses the totality-of-the-circumstances approach. Thus, the jury instructions, which were framed in terms of consent, did not correctly state the legal rationale for finding a probation search reasonable. (This was

understandable, in that the pre-*Randolph* California cases use the consent rationale.)  However, as we have discussed, the facts establishing that the entry into the duplex was reasonable under the totality of the circumstances were undisputed.  That is, there was no dispute that the police knew that Justine was on probation for serious offenses, that she was subject to a warrantless search condition, and that she had just been identified as an accomplice to a car theft and stabbing.  Under these facts, the search was reasonable as a matter of law despite Josephine's objection.  Thus, the court's instructing the jury that the search would be reasonable if it was based on Justine's consent as a term of probation was harmless.  *See Davis v. Mason County*, 927 F.2d 1473, 1482 (9th Cir. 1991) (noting that error in jury instruction is harmless when subject of instruction is resolved as a matter of law).

### D.

As we mentioned above, an additional requirement for a warrantless probation search is that the police have probable cause that the home they are searching is actually the home of the probationer.  *Motley*, 432 F.3d at 1080.  In her reply brief, Josephine contends that the evidence at trial was insufficient to permit the jury to reasonably conclude that the officers had probable cause to believe that Justine resided there.  This argument, which has nothing to do with *Randolph*, is a potential alternative ground for reversing the district court's denial of the plaintiff's motion for judgment as a matter of law.  But Josephine did not raise this alternative ground for reversing the denial of the motion in her opening brief, and thus we are inclined to consider it waived.  *See, e.g.*, *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (argument raised for first time in reply brief is waived).

In any event, the evidence at trial was sufficient to permit the jury to find that the officers had probable cause to believe that Justine resided at the duplex. The evidence allowed the jury to find that, on the morning of the search, officers retrieved records from three separate sources—the probation department, county databases, and the state DMV—indicating that Justine lived at the duplex. Most of these documents listed her address as 940 Gale Drive, but 942 Gale Drive was also listed once. Josephine argues that Justine's listing both addresses required the police to believe that Justine moved back and forth between both addresses in a short period of time, which Josephine thinks is incredible and prevented the police from having probable cause to believe that Justine lived at either address. However, because both addresses belonged to the same duplex, the jury could have reasonably concluded that Justine's having used both addresses did not cast doubt on whether she lived at the duplex. It is not as though the different addresses were for different homes in different parts of town.

Josephine also points to a police warrant report involving Justine that contains a note stating that, as of June 1, 2009, Justine was "not living on Gale." But this report was created before Justine was even placed on probation in December 2009 or reported to the probation department that she lived at the duplex. This report also predates the entries in the DMV and county databases listing the Gale Drive addresses as her residence. Thus, while the report might have cast doubt on whether Justine lived at the duplex in June 2009, it did not prevent the jury from finding that the officers had probable cause to believe that she lived at the duplex at the time of the search in October 2010.

## III.

We conclude that the district court did not err in denying Josephine's motion for judgment as a matter of law or in instructing the jury.

**AFFIRM**